| | | |
|---|---|---|
| JANET CHRISTINE WOHLER, | ) | CASE NO. 1:19CV56 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL[1], | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Plaintiff Janet Christine Wohler ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). ECF Dkt. #1. Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence because he: (1) erred in evaluating opinion evidence; (2) improperly applied the "Grids" in a mechanical fashion; and (3) erred in his assessment of Plaintiff's credibility. ECF Dkt. #s 12, 16. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case for reevaluation of Dr. Zielinski's opinion in part and Dr. Andrefsky's opinion in whole.

I.     PROCEDURAL HISTORY

On April 9, 2015, Plaintiff filed an application for a period of disability and DIB. ECF Dkt. #9 ("Tr.")[2] at 16, 144, 160, 248. In her application, Plaintiff alleged disability beginning October 21, 2014 (when she was 51 years old) due to: multiple sclerosis, nystagmus, and double

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill. *See* Fed. R. Civ. P 25(d).

[2] All citations to the transcript refer to the page numbers assigned when the transcript was compiled (located on the bottom right corner of each page) rather than the page numbers assigned when the transcript was filed in the CM/ECF system ("PageID #").

vision. *Id.* at 16, 129, 145. Plaintiff's application was denied initially on August 20, 2015 and upon reconsideration on October 22, 2015. *Id.* at 16, 142, 144, 158, 160.

On November 3, 2015, Plaintiff requested an administrative hearing. Tr. at 16, 179. On February 21, 2017, a hearing was held before an ALJ in which Plaintiff, with counsel present, and a vocational expert ("VE") testified. *Id.* at 16, 38. At the conclusion of this hearing, the ALJ told Plaintiff that she would issue a favorable outcome for her, finding her disabled. *Id.* at 16, 88. However, the initial ALJ became unavailable and the case was reassigned to another ALJ who held a second hearing on September 1, 2017. *Id.* at 16, 91. Plaintiff was again represented by counsel and testified, and a VE also testified. *Id.* at 91.

The second ALJ disagreed with the first ALJ's conclusion. Tr. at 16-17. He issued his decision on December 6, 2017, finding Plaintiff not disabled and denying her application for DIB. *Id.* at 13-29. Plaintiff requested a review of the hearing decision, and on November 20, 2018, the Appeals Council denied review. *Id.* at 1-4, 246-47.

On January 9, 2019, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On April 17, 2019, Plaintiff filed a merits brief, and the Commissioner filed a merits brief on July 1, 2019. ECF Dkt. #s 12, 15. Plaintiff filed a reply brief on July 15, 2019. ECF Dkt. # 16. The parties consented to the jurisdiction of the undersigned. ECF Dkt. #11.

## II.    RELEVANT PORTIONS OF THE ALJ'S DECISION

On December 6, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 13-29. The ALJ stated that Plaintiff was insured for a period of disability and DIB on October 21, 2014, the date she alleged she became disabled, and she remains insured for these benefits through June 30, 2021. *Id.* at 19. The ALJ further noted that Plaintiff has not engaged in substantial gainful activity since October 21, 2014, the alleged onset date. *Id.* Continuing, the ALJ determined that Plaintiff had the following severe impairments: multiple sclerosis and vision problems involving both eyes. *Id.* The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b)[3], except for the following limitations and restrictions: can frequently climb ramps and stairs but cannot climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, and crouch; can occasionally read large print but cannot read small print (newspaper, labels, books, etc.); cannot perform work requiring depth perception or peripheral vision; cannot work near unprotected heights or around moving mechanical parts; cannot operate motor vehicles for commercial purposes. Tr. at 22.

The ALJ then stated that Plaintiff has not been able to perform any of her past relevant work since October 21, 2014, the alleged disability onset date. Tr. at 27. He further found that Plaintiff was an individual closely approaching advanced age ever since October 21, 2014,the alleged disability onset date. *Id.* at 28. The ALJ found that Plaintiff is a high school (and college) graduate who is able to communicate in English. *Id.* The ALJ determined that Plaintiff has no transferable work skills. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time between October 21, 2014, the date she alleged she became disabled, and the date of his decision. *Id.* at 29.

## III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and

---

[3] The ALJ mistakenly cited the regulation governing Supplemental Security Income ("SSI") benefits rather than DIB. 20 C.F.R. § 416.901 *et seq.* governs SSI determinations, while 20 C.F.R. § 404.1501 *et seq.* governs DIB determinations. Nonetheless, these regulations are virtually identical.

416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.     If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.     If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' [is] in other contexts, the threshold for such evidentiary sufficiency is not high."). Accordingly, when substantial evidence

supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.     LAW AND ANALYSIS

Plaintiff challenges the ALJ's decision of December 6, 2017, alleging that the ALJ erred: (1) by improperly weighing certain opinions; (2) by improperly applying the "grids" in a mechanical fashion and in failing to consider Plaintiff's significant additional vocational adversities; and (3) by improperly assessing Plaintiff's credibility, specifically by not considering her length work history. ECF Dkt. #s 12, 16. For the following reasons, the Court finds that the ALJ committed reversible error with regard to two medical opinions, warranting remand.

### A.     Medical Opinions

Plaintiff contests the ALJ's treatment of several opinions of record. Plaintiff avers that the ALJ did not adequately consider the opinions of treating sources, Dr. Zielenski and Dr. Andrefsky, and erred in evaluating the opinion of consultative examiner Dr. Hu. ECF Dkt. #17 at 20-21; #22 at 6-8.

### 1. Treating Physicians

An ALJ must give controlling weight to the opinion of a treating source[4] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Price v. Comm'r Soc. Sec. Admin.*, 342 Fed.Appx. 172, 175-76 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)). Although an ALJ must "consider" all of the factors in 20 C.F.R. § 404.1527(c) and must "apply" the factors listed in 20 C.F.R. § 404.1527(c)(2), including its subsections, through (c)(6) to determine the weight to give that opinion, he is not required to discuss every factor in his decision as long as he provides "good reasons." *See* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (1996)[5]; *Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."); *Francis v. Comm'r Soc.*

---

[4] The Social Security Administration has changed the treating physician rule for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," available at https://www.regulations.gov/document?D=SSA-2012-0035-0001. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors. Since Plaintiff filed his claim before March 27, 2017, the former treating physician rule applies.

[5] Effective March 27, 2017, SSR 06-03p, 96-2p, and 96-5p have been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263. These regulations are still effective for claims filed before March 27, 2017.

*Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted). Even a one sentence explanation for discounting a treating physician's opinion can suffice under the good reasons requirement. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one -sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement.) (internal citations omitted).

Under the "good reasons" rule, the ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. This allows a plaintiff to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 544); *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011).

a.      Dr. Kathleen Zielinski, M.D.

Dr. Zielinski is Plaintiff's treating ophthalmologist and first treated Plaintiff on December 16, 2013. Tr. at 27, 417. On September 22, 2015, Dr. Zielinski provided the following diagnoses for Plaintiff: multiple sclerosis, diplopia, nystagmus, and optic neuritis. *Id.* at 417. She further stated that "Plaintiff has a history of optic neuritis (several episodes) which has left her with permanent vision loss. She has also had nystagmus and progressive diplopia which she underwent surgery for 12-26-13 with no improvement." *Id.* On December 23, 2013, the surgery Dr. Zielinski referred to was "four muscle tenotomy (strabismus surgery)." *Id.* Plaintiff has also been prescribed prism glasses, which resulted in only minimal improvement. *Id.* at 417-18. Dr. Zielinski further noted that Plaintiff does not take ocular medications but that she takes medications for her multiple sclerosis. *Id.* at 418. When asked about Plaintiff's limitations on her ability to work, Dr. Zielinski stated: "She is a nurse and given her diplopia and visual limitations this has a huge impact on her work duties. She also has difficulty driving, starting IV's, [and] reading." *Id.*

On February 7, 2017, Dr. Zielinski completed a Vision Impairment Medical Source Statement. Tr. at 456-58. By this time, Dr. Zielinski noted that she has treated Plaintiff for the past 8 years for 3 to 4 visits per year. *Id.* at 456. She reiterated the diagnoses of diplopia, nystagmus, and optic neuritis (bilateral), and her prognosis was "chronic progressive." *Id.* Her visual acuity after best correction in her right eye was 20/30 and in her left eye it was 20/400. *Id.* Dr. Zielinski described Plaintiff's symptoms as: difficulty with depth perception; diplopia; oscillopsia (spinning view of world)/nystagmus; amblyopia OS; and poor night vision. *Id.* As a result of her vision limitations, Dr. Zielinski opined that Plaintiff could never perform work activities involving near acuity, far acuity, depth perception, accommodation, and field of vision. *Id.* at 457. She opined that Plaintiff could rarely perform work involving color vision. *Id.* She further opined that: Plaintiff was capable of avoiding ordinary hazards in the workplace ,such as boxes on the floor, doors ajar, and approaching people or vehicles; had difficulty walking up or down stairs; cannot work with small objects such as those involved in doing sedentary work; can work with large objects; can frequently lift and carry less than 10 pounds, occasionally 10

8

pounds, rarely 20 pounds, and never 50 pounds; can frequently stoop (bend) and crouch/squat. *Id.* Finally, Dr. Zielinski opined that Plaintiff would sometimes need to take unscheduled work breaks, but noted that it depended on the task because her vision severely limits her abilities to work. *Id.* at 458. She opined that Plaintiff would be "off task" 25% or more during a workday. *Id.*

The ALJ recited Dr. Zielinski's opinion evidence in his December 6, 2017 opinion and how much weight he afforded to different aspects of her opinion. *Id.*; tr. at 416-18, 456-58. In concluding that Plaintiff has not been able to work in potentially hazardous jobs, or in jobs where she would have to read large print more than occasionally, or in jobs where she would have to read small print, the ALJ gave "some weight" to Dr. Zielinski's opinion. Tr. at 27 (citing tr. at 416-18, 456-58). He agreed with Dr. Zielinski's assessment that Plaintiff's vision problems have some effect on her ability to use stairs. *Id.* (citing tr. at 457). However, the ALJ afforded "no weight" to the most restrictive opinions Dr. Zielinski referenced about Plaintiff's exertional abilities, including her opinion that Plaintiff could "rarely" lift 20 pounds as not being supported by the weight of the evidence, including evidence referenced elsewhere in his decision. *Id.* (citing tr. at 458). The ALJ further noted that Dr. Zielinski's most restrictive opinions, including her opinion that Plaintiff's impairments would cause her to be "off task" more than 25% of a typical workday was also at odds with the opinions of State agency physicians, Drs. Teague and Cacchillo, who reviewed the record. *Id.* (citing tr. at 458). Finally, the ALJ stated that Dr. Zielinski's opinion that Plaintiff's "vision severely limits her ability to work" touches on an issue that is reserved to him. *Id.* (citing tr. at 458).

Plaintiff takes issue with the ALJ's treatment of Dr. Zielinski's opinion because the ALJ did not discuss all of the 20 C.F.R. § 404.1527(c) factors. ECF Dkt. #12 at 10-11. However, an ALJ is not required to exhaustively discuss each and every factor. *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted).

Moreover, the ALJ correctly stated that the determination of disability for Social Security purposes is reserved to the Commissioner. Tr. at 27 (noting Dr. Zielinski's opinion about Plaintiff's vision limiting her ability to work "also touches on an issue that is reserved to me."), 458; *see* 42 U.S.C.A. § 405(b)(1); 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1527(d)(1); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.") (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997)). Plaintiff is correct that SSR 96-5p directs that "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner," and may need to recontact such sources when "the bases for such opinions are not clear to us." SSR 96-5p, 1996 WL 374183, at *2. There is no indication that Dr. Zielinski's opinion was unclear to the ALJ, and therefore, he did not need to recontact her. Also, the ALJ not only considered, but also actually agreed with Dr. Zielinski because he found that Plaintiff's vision problems in both eyes constituted a severe impairment and even accounted for it in his ultimate RFC determination. Tr. at 19, 22.

Next, Plaintiff takes issue with the ALJ's broad statement that Dr. Zielinski's opinion was unsupported by the weight of the evidence. ECF Dkt. #12 at 14. Plaintiff avers that Dr. Zielinski's opinion was not inconsistent with the evidence of record. *Id.* at 15. For support, Plaintiff points primarily to evidence in the record related to her vision problems but also some notes of fatigue and pain. *Id.* at 15-17. To clarify, the ALJ discounted Dr. Zielinski's most restrictive limitations regarding her exertional abilities, citing, for example, her opinion that Plaintiff could rarely lift 20 pounds, as unsupported by the weight of the evidence. Tr. at 27. He did not discount Dr. Zielinski's opinion of vision problems in this sentence. *Id.* An ALJ must make determinations based upon the record as a whole. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). So, too, must this Court upon judicial review. *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989) ("It is well established that judicial review of the Secretary's findings must be based upon the record taken as a whole."). The Sixth Circuit has also endorsed

supporting a conclusion in a particular step of the ALJ's decision by looking to factual findings elsewhere in that decision. *See generally Forrest v. Comm'r of Soc. Sec.*, 591 Fed.Appx. 359, 365-66 (6th Cir. 2014) (finding that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination). Within his RFC discussion, the ALJ specifically described how he supported his RFC finding with regard to Plaintiff's exertional abilities:

> In assessing the claimant's [RFC], I have also placed great significance on the fact that the claimant was described on November 11, 2015 as having normal strength in her upper and lower extremities, and as having a normal gait, and as being able to stand up from a chair without difficulty (citing tr. at 422). I have also given great weight to the claimant's description of herself on November 11, 2015 as "doing well for the last year" with respect to her multiple sclerosis (citing tr. at 423). I have also placed great weight on the fact that the claimant was described on February 9, 2017 as being neurologically intact, and as having a normal gait, and as having normal strength in her upper and lower extremities (citing tr. at 465-67). I have also considered, and placed great significance on, the fact that the claimant was described on May 15, 2017, and again on June 8, 2017, as having a normal gait and normal muscle strength in her upper and lower extremities (citing tr. at 477-81).

Tr. at 26. The ALJ's conclusion that the weight of the evidence did not support Dr. Zielinski's extreme limitations regarding exertional abilities is supported by substantial evidence.

Lastly, Plaintiff takes issue with the fact that the ALJ rejected Dr. Zielinski's most restrictive opinion, including her opinion that Plaintiff's impairments would cause her to be "off task" more than 25% of a workday was "at odds" with the State agency physician opinions, namely Drs. Teague and Cacchillo. ECF Dkt. #12 at 17-19. Plaintiff argues that these opinions, which were assigned "great weight" were "stale" because Drs. Teague and Cacchillo reviewed the record in October 2015 and had only 68 pages of medical records to review, which was less than half of the amount of records before the ALJ. *Id.* at 17. The Sixth Circuit has stated that an ALJ may still rely on opinions of a non-examining source or state agency medical consultant who did not review the complete case record as long as the record reflects that the ALJ himself considered the complete case record. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) ("Even if [State agency medical consultant's] RFC was completed without knowledge of [subsequent medical] issues, however, the record reflects that the ALJ considered them."); *Miller*

*v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) ("Where the non-examining source did not review a complete case record, 'we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion' from the non-examining source.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). The Commissioner is correct in stating that there necessarily is a time lapse between the state agency opinions and when the ALJ holds a hearing and issues a decision. ECF Dkt. #15 at 12. Plaintiff has not alleged that the ALJ himself did not consider all of the available evidence, nor does the Court find so.

While the ALJ could rely on the opinions of Drs. Teague and Cacchillo, neither physician provided a mental impressions on Plaintiff, including the ability to stay on task or to maintain attention and concentration. *See* tr. at 136-39, 151-54. Thus, using these opinions in comparison with Dr. Zielinski's opinion that Plaintiff would be "off task" more than 25% of a workday was improper. There is no "logical bridge" between this particular opinion of Dr. Zielinski and justifying less deference to it by way of reference to Drs. Teague and Cacchillo. See Fleischer v. Astrue, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) ("[T]his Court cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'") (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); citing *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion)). As an aside, the Court notes that the State agency psychologists, Dr. Kristen Haskins, Psy.D., and Dr. Jennifer Swain, Psy.D., both noted certain mental limitations, including concentration and persistence. Tr. at 139-41, 154-56. However, this Court is not in a position to translate their findings and compare them to Dr. Zielinski's opinion. Nor has the ALJ stated how much, if any, weight he afforded to the opinions of Drs. Haskins and Swain. *Id.* at 26. Therefore, the ALJ's reliance on the State agency physician opinions to discredit Dr. Zielinski's opinion does not constitute a "good reason."

The ALJ addressed the consistency and supportability factors of 20 C.F.R. § 404.1527(c) and provided some good reasons to afford less than controlling weight to Dr. Zielinski's opinion. However, the ALJ broke down Dr. Zielinski's opinion into parts, and so, too, does this Court. To the extent that the ALJ discredited her "most restrictive opinions, including her opinion that the claimant's impairments would cause her to be 'off task' more than 25% of a typical workday," the Court remands the case for the ALJ to reconsider this aspect of her opinion.

### b. Dr. John Andrefsky, M.D.

Dr. Andrefsky is Plaintiff's treating neurologist. Tr. at 27. On February 9, 2017, Dr. Andrefsky completed a Multiple Sclerosis Medical Source Statement, noting that Plaintiff's symptoms included: chronic fatigue; balance problems; paresthesias; blurred vision; difficulty remembering; unstable walking; nystagmus; double vision; poor coordination; numbness; dimness of vision; and partial blindness. *Id.* at 459. He opined that Plaintiff could: walk without rest or severe pain for 1-2 city blocks; sit more than 2 hours at one time; stand 45 minutes at one time; can sit about 4 hours and stand/walk less than 2 hours in an 8-hour workday; requires a job that permits her to shift positions at will; and will sometimes needs to take 2 to 3 unscheduled breaks during a workday lasting 30 minutes each due to muscle weakness, chronic fatigue, and pain/paresthesias. *Id.* at 460-61. Dr. Andrefsky further opined that Plaintiff: can frequently lift and carry less than 10 pounds and rarely 10 pounds; can occasionally twist, stoop (bend), and crouch/squat. *Id.* at 461. He believed that Plaintiff's limitations in using her upper extremities was caused by pain/paresthesias, muscle weakness, and fatigue and that she has some limitations using her hand, fingers, and arms. *Id.* Dr. Andrefsky stated that Plaintiff would likely be "off task" about 20% of a workday and that she would likely be absent from work more than 4 days per month as a result of her impairments. *Id.* at 462. In response to the last question of what is the earliest date that the description of symptoms and limitations applied, Dr. Andrefsky wrote "1984." *Id.*

The ALJ stated the following with regard to Dr. Andrefsky's opinion:

In assessing the claimant's [RFC], I have also considered, but given little weight to, the most restrictive opinions a treating neurologist, John C. Andresfsky, M.D., offered on February 9, 2017. Among other things, Dr. Andrefsky[sic] said that,

since 1984, the claimant had a [RFC] for a reduced range of sedentary work. Besides being at odds with the opinions of Drs. Teague and Cacchillo, the above-mentioned State agency psychologists[6] who reviewed this record, Dr. Andrefsky's[sic] most restrictive opinions are at odds with the evidence, including evidence that the claimant was able to perform medium work for decades after 1984. Because Dr. Andrefsky's[sic] most restrictive opinions are also at odds with the weight of the evidence concerning the claimant's functioning since the October 21, 2014 alleged onset date, including the evidence referenced above, I find that, in offering opinions about the claimant's [RFC], he gave undue weight to her subjective reporting of her symptoms and abilities.

Tr. at 27.

Like her contentions with regard to Dr. Zielinski, Plaintiff challenges the ALJ's treatment of Dr. Andrefsky's opinion because the ALJ did not discuss all of the 20 C.F.R. § 404.1527(c) factors. ECF Dkt. #12 at 10-11. Again, an ALJ is not required to exhaustively discuss each and every factor. *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011).

Plaintiff also argues that the ALJ gave an unreasonably narrow reading to Dr. Andrefsky's opinion that Plaintiff has a "[RFC] for a reduced range of sedentary work" since 1984. ECF Dkt. #12 at 13 (citing tr. at 27). Plaintiff is correct in that Dr. Andrefsky did not expressly opine for "sedentary work," but rather, Dr. Andrefsky opined that Plaintiff's earliest symptoms and limitations started in 1984. *Id.*; tr. at 27, 462. Plaintiff clarified that 1984 is when Plaintiff began to develop symptoms of multiple sclerosis, which a progressive condition for which Dr. Andrefsky was specifically providing an opinion. ECF Dkt. #12 at 13 (citing *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981); *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990) ("[I]n evaluating multiple sclerosis, or any other episodic disease, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities.")). Plaintiff is correct in stating that the fact that Plaintiff first began to develop multiple sclerosis in 1984 is distinct from the question as to when it became disabling. *Id.* Plaintiff argues that since the ALJ questioned Dr. Andrefsky's opinion on this "ambiguity" to discredit his opinion, the ALJ not only had the authority to recontact him but should have

---

[6] The ALJ mistakenly referred to Drs. Teague and Cacchillo as psychologists. They are actually physicians who assessed Plaintiff's *physical* RFC. *See* tr. at 136-39, 151-54.

recontacted him pursuant to an affirmative duty to develop the record. *Id.* (citing 20 C.F.R. § 404.1520b(b); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983)).

In certain circumstances, an ALJ has a special, heightened duty to develop the record, but only when a claimant is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson v. Comm'r of Soc. Sec.*, 280 Fed.Appx. 456, 459 (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir.1983)). Those circumstances are not present here because Plaintiff had the assistance of counsel throughout her case. Absent such special circumstances, the claimant bears the ultimate burden of proving disability. *Id.* (citing *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed.Appx. 113, 115 (6th Cir.2003)). While the Court is not persuaded by Plaintiff's argument that the ALJ had a duty to further develop the record, the Court does agree that the ALJ's reasoning for discounting Dr. Andrefsky's opinion is flawed.

First, as already noted, the ALJ misrepresented Dr. Andrefsky's answer to the last question on his statement where he wrote "1984". Tr. at 27, 462. It also does not appear that the ALJ considered this opinion in light of the progressive nature of multiple sclerosis. The ALJ stated that Dr. Andrefsky's most restrictive opinions were at odds with the weight of the evidence, specifically citing "evidence that the claimant was able to perform medium work for decades after 1984." *Id.* at 27. It is true that Plaintiff continued working as a registered nurse in a neonatal intensive care unit for many years after 1984. *Id.* at 100-01. However, there is no indication that the ALJ considered the unique and progressive nature of multiple sclerosis in his discussion of Dr. Andrefsky's opinion (whose opinion specifically centered around multiple sclerosis) or even elsewhere in his decision. *Id.* at 27; *see also* tr. at 19. This is at odds with Sixth Circuit precedent. *See Wilcox v. Sullivan*, 917 F.2d 272, 277 & n.10 (6th Cir. 1990) (despite claimant's multiple sclerosis onset in 1981, he continued working until 1986, and he "should not be penalized because he had the courage and determination to continue working despite his disabling condition."); *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981) (noting employment after multiple sclerosis diagnosis was temporary because it "is an incurable, progressive disease subject to such periods of remission and exacerbation.") ("[W]e believe the ALJ erred in placing

undue reliance on this brief and temporary interruption of plaintiff's progressively disabling condition. Rather, he should have considered that time-span as merely a period of remission in a continuing disability in making his finding."); *Anderson v. Comm'r of Soc. Sec.*, 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) ("[M]ultiple sclerosis is a disease that requires a longitudinal evaluation, which the ALJ failed to perform in this case."); *see also* Program Operations Manual System ("POMS"), DI 24580.015 (Evaluation of Multiple Sclerosis (MS)).

Next, the ALJ reasoned that Dr. Andrefsky's opinion was "at odds" with the opinions of Drs. Teague and Cacchillo. Tr. at 27. However, unlike his similarly worded reasoning pertaining to Dr. Zielinski, the ALJ did not specify exactly what of Dr. Andrefsky's opinion was "at odds" with the opinions of Drs. Teague and Cacchillo. *Id.* There is also an ambiguity because the ALJ referred to Drs. Teague and Cacchillo as State agency "psychologists," even though they are physicians and did not provide a mental RFC. *Id.* at 136-39, 151-54. As discussed above with regard to Dr. Zielinski's opinion, the ALJ made a mistake where he appears to have attributed an opinion to Drs. Teague and Cacchillo that did not exist (mental impressions of attention, or, in other words, being "off task"). *Id.* at 27. Thus, the ALJ's reasoning is ambiguous–it is unclear whether he found an inconsistency in mental or physical impressions and to what those inconsistencies pertain. Considering his misrepresentations of the opinions of Drs. Teague and Cacchillo in his analysis of both Drs. Zielinski and Andrefsky, the Court finds that this reason is insufficient to discredit Dr. Andrefsky's opinion (and Dr. Zielinski's opinion, already discussed).

Finally, the ALJ found that Dr. Andrefsky gave undue weight to Plaintiff's subjective complaints of her symptoms and abilities because of the same reasons already discussed, namely the alleged inconsistencies. Tr. at 27. An ALJ may properly discount a treating source's opinion that draws from a claimant's subjective complaints of symptoms rather than objective medical evidence. *Martin v. Comm'r of Soc. Sec.*, 658 Fed. Appx. 255, 258 (6th Cir. 2016) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (holding that because the treating doctors "formed their opinions solely from [the claimant]'s reporting of her symptoms and her conditions, and the ALJ found that [the claimant] was not credible," the ALJ committed no error

in according them less than controlling weight); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given [controlling] deference when supported by objective medical evidence."). However, simply discrediting such a treating source's opinion due to an unsupported inference of undue sympathy, without more, does not constitute a "good reason." *Price v. Comm'r of Soc. Sec.*, No. 3:13-CV-394, 2015 WL 93644, at *5 (S.D. Ohio Jan. 7, 2015), *report and recommendation adopted*, 2015 WL 1402587 (S.D. Ohio Mar. 25, 2015) (language suggesting bias on the part of a treating doctor "is not a 'good reason' for discounting a treating physician's opinion where the possibility of bias is not supported by any specific evidence in the record."); *see Reese v. Saul*, No. 3:18-CV-442-HBG, 2020 WL 1312703, at *6 (E.D. Tenn. Mar. 19, 2020) (same). Even if an ALJ provides an "improper suggestion of bias, the ALJ's assignment of less than controlling weight to the opinion of a treating physician may still be upheld if the other listed reasons are supported by substantial evidence." *Reese*, 2020 WL 1312703, at *6 (citing *Daniel v. Comm'r of Soc. Sec.*, 527 Fed. Appx. 374, 375 (6th Cir. 2013) ("However, even with the possible sympathy removed from the analysis, there is other substantial evidence to support the ALJ's decision on the treating physician's credibility."); *Sito v. Comm'r of Soc. Sec.*, No. 3:17-cv-1979, 2018 WL 4179457, at *26 (N.D. Ohio Aug. 31, 2018) ("While the Court finds this type of reasoning misguided and speculative, the ALJ did provide other 'good reasons' to support the rejection of [the treating physician's] opinion which are supported by substantial evidence.")).

Here, the ALJ did not support his finding that Dr. Andrefsky "gave undue weight to [Plaintiff's] subjective reporting of her symptoms and abilities." Tr. at 27. The ALJ's only support stems from reasons this Court has already found to be defective. Accordingly, this fails to suffice as a "good reason" to discount Dr. Andrefsky's opinion. The ALJ has not provided any satisfactory "good reasons" to discount Dr. Andrefsky's opinion. As such, it is not supported by substantial evidence, and this case is remanded for the ALJ to reconsider Dr. Andrefsky's opinion in its entirety.

## 2.     Consultative Examiner, Dr. Anderson Hu, D.O.

Plaintiff further challenges the ALJ's treatment of consultative examiner, Dr. Hu. ECF Dkt. #12. On June 13, 2015, Dr. Hu examined Plaintiff once at the request of the Commissioner. Tr. at 27-28, 399-406. Based on his exam, he noted that Plaintiff was able to walk for over an hour, sit for more than an hour at a time, stand for over an hour, and lift 10 pounds. *Id.* at 401. He concluded that she did not have any substantial physical limitations except for her vision, which is markedly decreased in her left eye and worsening in her right from the progression of her multiple sclerosis. *Id.* at 401, 403-06. Dr. Hu used a Snellen vision test, finding that her right eye visual acuity was 20/40, her left eye was 20/>200, and both eyes were 20/40. *Id.* at 401. He found that the vision in her right eye was currently acceptable but, based on Plaintiff's reports, is starting to decrease in acuity. *Id.*

Plaintiff acknowledges that Dr. Hu is not a treating physician and is, therefore, not entitled to higher deference associated with treating physician status. ECF Dkt. #12 at 14. Nonetheless, the Commissioner must still "consider" and "evaluate" every medical opinion from acceptable medical sources in the record in light of the 20 C.F.R. § 404.1527(c) factors. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) ("The factors set forth in 20 C.F.R. § 404.1527, which under the regulation apply only to medical opinions from acceptable medical sources, nevertheless 'represent basic principles that apply to the consideration of all opinions from medical sources ... who have seen the individual in their professional capacity.'"); *Hedrick v. Berryhill*, No. 1:17CV2310, 2018 WL 6348759, at *6 (N.D. Ohio Nov. 14, 2018), *report and recommendation adopted*, No. 1:17-CV-2310, 2018 WL 6344611 (N.D. Ohio Dec. 4, 2018) ("[O]pinions of one-time examining physicians ... are weighed under the same factors as treating physicians including supportability, consistency, and specialization.") (quoting *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp.2d 813, 823–24 (S.D.Ohio 2011)).

An ALJ need not incorporate all of a non-treating source's opined restrictions, even if he attributes significant weight to the opinion. *See White v. Comm'r of Soc. Sec. Admin.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio 2013) ("The fact that the ALJ did not incorporate all of [agency examining physician's] restrictions, despite attributing significant weight to his opinion, is not

legal error in and of itself."); *cf. Smith v. Comm'r of Soc. Sec.*, No. 5:11CV2104, 2013 WL 1150133 (N.D.Ohio, Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."). Rather, the ALJ must simply show that he considered and evaluated the opinion. *See* 20 C.F.R. § 404.1527(c); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013).

The ALJ afforded "some weight" to the opinion of Dr. Hu. Tr. at 26. But,

> to the extent it is argued that Dr. Hu's opinions support a finding that the claimant has a [RFC] for a reduced range of sedentary work, I reject his opinions as not being supported by the weight of the evidence concerning the claimant's functioning since the aod[sic] alleged onset date, including the evidence referenced in this decision.

Tr. at 27.

Plaintiff takes issue with the fact that the ALJ failed "to explain any portion he was crediting" and did not meaningfully articulate his reasons. ECF Dkt. #12 at 9, 14. Plaintiff also characterizes Dr. Hu as a "double expert" in both disability evaluation generally and in Social Security programs. *Id.* at 11. The ALJ appears to have acknowledged the 20 C.F.R. § 404.1527(c) factors of examining relationship, length of the treatment relationship, and specialty. Tr. at 26-27 (Dr Hu is a "*consulting physician* who *examined the claimant on a sole occasion* on June 13, 2015 *at the request of the Commissioner.*") (emphasis added).

The ALJ described Dr. Hu's opinion as supporting a RFC for a reduced range of sedentary work. Tr. at 27. This may not have been the most accurate description of Dr. Hu's findings considering his physical evaluation was completely normal, aside from her vision impairments. *Id.* at 401, 403-06. Nonetheless, any potential error here would be harmless because the ALJ accounted for physical limitations, including, most importantly, Plaintiff's vision problems. *Id.* at 22. The ALJ did not need to provide "good reasons" for giving only "some weight" to Dr. Hu's opinion, and he demonstrated that he considered Dr. Hu's opinion in light of the appropriate Social Security regulations. Plus, any potential error would be harmless given the restrictions the ALJ already accounted for in his RFC determination.

**B.    Application of the Grids**

Plaintiff's next main argument is that the ALJ erred by improperly applying the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids") in a mechanical fashion. ECF Dkt. #s 12 at 19-14; #16 at 4-6. Specifically, Plaintiff argues that her age category was less than 5 months from changing to an individual of "advanced age" at the time of the ALJ's decision. *Id.* If the ALJ had considered Plaintiff to be an individual of "advanced age" with otherwise all the same vocational factors, Plaintiff avers that she would have met the definition of "disabled" as a matter of law pursuant to the Grids. *Id.* Plaintiff takes issue with the fact that the ALJ did not acknowledge or discuss Plaintiff's borderline age situation in his decision. *Id.*

At the fifth step of the disability analysis, the Commissioner has the burden of showing that a significant number of jobs exist in the economy that a claimant can perform with her RFC and vocational profile. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet that burden by referring to the Grids, which dictate a finding of "disabled" or "not disabled" based on the claimant's exertional restrictions and "vocational factors," including age, education, and prior work experience. *See Born v. Secretary of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir.1990); SSR 83-11; 20 C.F.R. § 404.1560(c)(1) (noting "vocational factors" include age, education, and past work experience). When the claimant cannot perform substantially all of the exertional[7] demands of work at a given level of exertion and/or has nonexertional[8] limitations, the Grids are used as a framework for decision-making unless there is a rule that directs a

---

[7] "Exertional" demands are related to physical strength. "When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), we consider that you have only exertional limitations." 20 C.F.R. § 404.1569a(b).

[8] "Nonexertional" limitations encompass anything other than strength demands. It includes limitations or restrictions related to mental impairments, sensory impairments (including vision), and certain manipulative or postural functions. 20 C.F.R. § 404.1569a(c).

conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations. Tr. at 28; SSR 83-12; SSR 83-14.

The Sixth Circuit has clarified the use of the Grids as follows:

> When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available.

*Hurt v. Sec'y of Health & Human Servs.*, 816 F.2d 1141, 1142–43 (6th Cir. 1987) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir.1981), *cert. denied*, 461 U.S. 957 (1983)).

The Grids are found in the regulations and are a shortcut to eliminate the need for calling a vocational expert. *Hurt*, 816 F.2d at 1142. However, the Grids do not indicate the degree of an individual's disability or what their RFC might be. *Id.* at 1142-43. Generally, if a claimant's characteristics are identical to those found in the Grids, then the Grids determine whether significant numbers of other jobs exist for the claimant or whether that person is disabled. *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (citing *Hurt*, 816 F.2d at 1142-43); *Kirk*, 667 F.2d at 528 ("[I]f the characteristics of the claimant do not identically match the description in the grid, the grid is only used as a guide to the disability determination."). However, if a claimant's impairments do not precisely fit into the Grids, then her RFC (e.g., light work) will be used as the appropriate "framework" to determine disability. *Wright*, 321 F.3d at 615. Social Security regulations state the same:

> The rules in appendix 2 do not cover all possible variations of factors. Also, as we explain in § 200.00 of appendix 2, we do not apply these rules if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule. In these instances, we give full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations. However, if the findings of fact made about all factors are the same as the rule, we use that rule to decide whether a person is disabled.

20 C.F.R. § 404.1569.

However, where "an individual who suffers from both exertional and nonexertional impairments, [and] where the grid does not yield a finding of 'disabled' when the exertional

impairments are considered alone, the grid may be employed only as a 'framework' to provide guidance." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); 20 C.F.R. pt. 404, subpt. P, appx. 2, §200.00(e)(2). "Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [her] exertional limitations." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The ALJ may rely on the assistance of a vocational expert to make this determination. *See Damron v. Sec'y of Health & Hum. Servs.*, 778 F.2d 279, 282 (6th Cir.1985); SSR 83-14.

The ALJ in the instant case used Grid Rule 202.14 as a framework, which applies to claimants who have the RFC to perform the full range of light work. Tr. at 28. The ALJ found that Plaintiff's ability to perform all or substantially all of the requirement of this level of work (light work) is impeded by additional limitations. *Id.* To help him determine the extent to which her limitations erode the unskilled light occupational base, the ALJ questioned a VE at the hearing as to whether jobs exist in the national economy for an individual with Plaintiff's same vocational factors (age, education, work experience, and RFC). *Id.* at 28-29. The VE testified that there were jobs that existed that an individual, such as Plaintiff, could perform. *Id.* at 29. Citing SSR 00-4p, the ALJ determined that the VE's testimony was not inconsistent with the information contained in the Dictionary of Occupational Titles. *Id.*

The Commissioner contends that the ALJ's step five analysis was proper–since Plaintiff was not able to perform substantially all of the exertional demands of work at the light exertional level and had nonexertional limitations, the ALJ properly used the Grids as a "framework" and relied on the VE's testimony. ECF Dkt. #15 at 13-14. Plaintiff acknowledges that the Grids generally apply only as a "framework" when a claimant has exertional and nonexertional limitations. ECF Dkt. #16 at 4-5. However, she clarifies that "if a [Grid] rule applies to direct that a claimant is disabled without consideration of non-exertional limitations, there is no need to consider the non-exertional limitations." *Id.* at 5 (citing 20 C.F.R. § 404.1569a(d) ("If your impairment(s) and related symptoms ... affect your ability to meet both the [exertional and nonexertional demands], we will not directly apply the rules in appendix 2 unless there is a rule

that directs a conclusion that you are disabled based upon your [exertional] limitations; otherwise the rules provide a framework to guide our decision."); SSR 83-14 ("Where a person's [RFC], age, education, and work experience coincide with the criteria of an exertionally based rule in Table No. 1, 2, or 3–and that rule directs a conclusion of 'Disabled'–there is no need to consider the additional effects of a nonexertional impairment since consideration of it would add nothing to the fact of disability.")). Plaintiff states that had the ALJ considered Plaintiff's borderline age as nearly being "advanced," the ALJ would have been able to apply the Grids, specifically Grid Rule 202.06, to find her disabled, irrespective of the presence of her nonexertional limitations. ECF Dkt. #12 at 22; #16 at 5. She claims that in such a case, the VE's testimony would have been "wholly irrelevant." ECF Dkt. #16 at 5. The Commissioner failed to respond to this precise argument, and Plaintiff is correct that if she were deemed an individual of "advanced age" with the same vocational factors the ALJ already found, the Grids would find her disabled under Grid Rule 202.06. Thus, the inquiry becomes whether the ALJ was correct in classifying Plaintiff as an individual closely approaching advanced age and not an individual of advanced age, given her borderline age status.

Social Security regulations provide that adjudicators:

> will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b); POMS DI 25015.006 (Borderline Age); HALLEX I-2-2-42.

Although without legal force, the Agency's Program Operations Manual System (POMS) and Hearings, Appeals and Litigation Law Manual of the Social Security Administration (HALLEX) are persuasive authority. *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) ("Although the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law, it is nevertheless persuasive."); *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008); HALLEX I-1-0-1. These Manuals address the borderline

age situation, stating that it exists if the claimant reached or will reach the next higher age category within a few days to a few months after, for example, the date of adjudication. In addition, both of the following must be true: (1) using the claimant's chronological age results in a not disabled determination; and (2) using the next higher age category to adjudicate the borderline period results in a disabled determination. When a borderline age situation exists, the Manuals direct the adjudicator to use a "sliding scale" approach to determine whether it is more appropriate to use the higher age or the claimant's chronological age. POMS DI 25015.006 (Borderline Age); HALLEX I-2-2-42.

While there is no precise time period for what constitutes a borderline age period, the Manuals and courts in this Circuit have generally found that a borderline age is a period within 6 months of the next age category at the specified time, including the time the ALJ issues a decision or the date last insured. POMS DI 25015.006 (Borderline Age); HALLEX I-2-2-42; *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1167-69 (W.D. Tenn. 2002) (remanding where ALJ failed to address the borderline age issue when claimant was four months and one day shy of her 55th birthday on the date of the ALJ's decision and collecting cases concluding that the borderline range falls somewhere around six months from the older age category); *Turner v. Astrue*, No. 3:10-CV-186, 2011 WL 2783832, at *8 (S.D. Ohio July 11, 2011) (collecting cases from different circuits to conclude that "it appears that the cutoff for a borderline situation is approximately six months"); *Roush v. Heckler*, 632 F. Supp. 710, 711-12 (S.D. Ohio 1984) (remanding where ALJ mechanically applied the age criteria of the Grids where claimant was 6 months shy of "advanced age" category).

Here, the ALJ's decision was issued less than 5 months prior to Plaintiff's 55th birthday. *See* tr. at 13, 145. In addition, using the next higher age category would change the disability determination to "disabled" according to the Grids. Thus, the Manual criteria are met and the use of the "sliding scale" approach is appropriate. POMS DI 25015.006; HALLEX I-2-2-42; *see Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008), *as amended*.

Older cases, including *Bowie*, took the definition of the "sliding scale" approach directly from the HALLEX, but the section concerning borderline age issues has recently changed as of

March 25, 2016. *Bowie*, 539 F.3d at 397 (noting prior HALLEX section, II-5-3-2). The Sixth Circuit emphasized the "additional vocational adversities" from the prior definition[9] and provided some examples of what this means: "the presence of an additional impairment that infringes on the claimant's remaining occupational base; having only a marginal ability to communicate in English; or a history of work experience in an unskilled job in one isolated industry or work setting." *Id.*

The updated HALLEX version describes the "sliding scale" approach as more of a "factor" test:

> The ALJ will take a "sliding scale" approach when determining which age category to use. To support the use of the higher age category, the claimant must show that the factor(s) have a progressively more adverse impact on his or her ability to adjust to other work as the period between the claimant's actual age and attainment of the next higher age category lengthens.

HALLEX I-2-2-42 (citing 20 C.F.R. §§ 404.1563, 416.963). While the updated section of HALLEX removed the "additional vocational adversities" language, the underlying meaning appears to be unchanged, as it simply rephrased the language to "factor(s) [that] have a progressively more adverse impact...." *Id.* HALLEX describes the "factors" as follows:

> ALJs will not use the higher age category automatically in a borderline age situation. ALJs will consider whether to use the higher age category after evaluating the overall impact of all the factors on the claimant's ability to adjust to doing other work (e.g., residual functional capacity combined with age, education, and work experience as explained in 20 CFR 404.1563, 416.963, and Part 404, Subpart P, Appendix 2). For additional information and examples, see also Program Operations Manual System (POMS) DI 25015.006.

HALLEX I-2-2-42.

The Sixth Circuit interpreted the language in 20 C.F.R. § 404.1563(b) to direct that an ALJ must only "consider" using the older age category in a borderline case; "nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." *Bowie v.*

---

[9] The prior HALLEX section stated: "Under [the sliding scale] approach, the claimant must show progressively more *additional vocational adversity(ies)*—to support use of the higher age—as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." *Bowie*, 539 F.3d at 397 (citing prior HALLEX II-5-3-2) (emphasis added).

*Comm'r of Soc., Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). Accordingly, there is no "*per se* procedural requirement to address borderline age categorization in every borderline case." *Id.* The only *per se* procedural requirement is the ALJ's fundamental duty in all cases, per 42 U.S.C. § 405(g), "to provide enough explanation of their overall disability determinations to assure reviewers that their decisions are supported by substantial evidence." *Id.* at 400. Consequently, "lack of an explanation [regarding a plaintiff's borderline age situation] may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence." *Id.* at 401.

Plaintiff avers that she has "additional vocational adversities" that justified using a higher age category. ECF Dkt. #12 at 22-23. Citing primarily to the ALJ's decision and findings, Plaintiff specifically points out that she: has vision problems involving both eyes; cannot read small print or perform any work requiring depth perception or peripheral vision; has blindness in her left eye; is limited to "frequent" postural activities; and has depression and anxiety. *Id.* (citing tr. at 19, 20-22, 77); *see Turner v. Astrue*, No. 3:10-CV-186, 2011 WL 2783832, at *9 (S.D. Ohio July 11, 2011) (discussing claimant's psychological and vision impairments as "additional vocational adversities") ("[A]s in [*Russell v. Comm'r of Soc. Sec.*, 20 F. Supp. 2d 1133, 1136 (W.D. Mich. 1998)], the sheer number of Plaintiff's impairments suggests satisfaction of the required showing of additional vocational adversities.").

The ALJ acknowledged Plaintiff's anxiety and depression but found that they were non-severe and did not interfere with her ability to perform any basic mental demands of unskilled work over any contiguous 12-month period since the alleged onset date. Tr. at 20-22, 24. While Plaintiff has certain vision and physical limitations, the ALJ accounted for these in his RFC determination. *Id.* at 22. Otherwise, Plaintiff has not shown any *additional* vocational adversities/factors to warrant remand on this issue. While Plaintiff has no transferable job skills, Plaintiff has a college education, can understand English, and her past relevant work was a skilled job generally performed at the medium exertional level. *Id.* at 27-28. *Compare Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008), *as amended* ("Examples of 'additional vocational adversities' are the presence of an additional impairment that infringes on the claimant's remaining occupational base; having only a marginal ability to communicate in English; or a

history of work experience in an unskilled job in one isolated industry or work setting."). Accordingly, this Court finds that the ALJ did not "mechanically apply" the Grids in violation of Social Security regulations concerning Plaintiff's borderline age situation, "despite its lack of an explicit discussion regarding age categorization." *Bowie*, 539 F.3d at 402.

### C.    Credibility Assessment

Plaintiff's final challenge is that the ALJ's credibility assessment is defective because he neglected to consider Plaintiff's work history. ECF Dkt. #12 at 24-25. She claims that her lengthy work history is a factor that lends to her credibility, not detracts from it. *Id.* at 25. Plaintiff does not challenge any other aspect of the ALJ's credibility assessment.

The evaluation of a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ" as long as they are supported by substantial evidence). Subject to the substantial evidence standard, an ALJ's findings are "entitled to considerable deference and should not be discarded lightly." *Carr v. Saul*, 2019 WL 3729265, at *6 (N.D. Ohio Aug. 8, 2019) (citing *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)); *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (internal quotation omitted). A claimant's subjective complaints can support a claim for disability if there is also objective medical evidence of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-476 (6th Cir. 2003).

An ALJ's "RFC assessment must be based on  all of the relevant evidence in the case record, such as: ... Evidence from attempts to work." SSR 96-8p, 1996 WL 374184, at *5. An ALJ must also evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which those symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c).In doing so, ALJs focus primarily on the objective medical evidence and medical opinions. 20 C.F.R. § 404.1529(c)(1)-(2). However, ALJs will also consider other types of

evidence presented, including information about a claimant's prior work record. 20 C.F.R. § 404.1529(c)(3).

It is true that an extensive work history and attempts to continue working despite a disability will generally lend support to a claimant's credibility. *See White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 789 (6th Cir. 2009) (unpublished) ("White's extensive work history and attempts to continue working despite his disability support his credibility, a factor not even considered by the ALJ."). However, the Sixth Circuit has specifically held that an ALJ "[is] not required to explicitly discuss [a claimant's] work history when assessing [her] credibility" so long as the ALJ provides substantial justification for his determination of a claimant's subjective symptoms. *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 Fed. Appx. 430, 433 (6th Cir. 2016) (unpublished) (rejecting argument that "the ALJ erred by failing to consider his consistent and arduous work history when evaluating his credibility"); *see Maki v. Comm'r of Soc. Sec.*, No. 1:18 CV 798, 2019 WL 3082309, at *9 (N.D. Ohio July 15, 2019). There is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Maki*, 2019 WL 3082309, at *9 (citing *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547-48 (6th Cir. 2002) (unpublished)); *see also Ricks v. Comm'r of Soc. Sec.*, No. 3:17-CV-634-DW, 2018 WL 3543083, at *7-8 (W.D. Ky. July 23, 2018) (finding ALJ supported his credibility determination with substantial evidence because the record showed that, during the hearing, he considered the claimant's work history which included 23 years in the U.S. Army, despite the written decision not expressly accounting for it). "While there is no question that a claimant's positive work history can bolster her credibility, an ALJ is not required to explicitly discuss that work history," but he must consider it along with all the other evidence presented in the record. *Maki*, 2019 WL 3082309, at *9 (citing *Dutkiewicz*, 663 Fed. Appx. at 433).

Here, the ALJ discussed Plaintiff's allegations in depth and described how they correspond to the limitations set out in his RFC determination. Tr. at 23. He afforded "weight" to Plaintiff's subjective reporting of her problems but only to the extent that they were consistent with his RFC determination. *Id.* In other words, the ALJ rejected the most extreme allegations Plaintiff made about her symptoms and abilities as being against the weight of medical and lay

evidence that touched on her physical and mental functioning since October 21, 2014, the alleged onset date. *Id.* Elsewhere in his decision, the ALJ noted Plaintiff's work history, albeit not for credibility purposes; however, it shows that he considered it. *Id.* at 24-25, 28. Also, during the hearing, the ALJ acknowledged her work history. *Id.* at 127 ("I understand that Ms. Wohler has worked for many, many years in a highly skilled occupation doing things that where she relied, you know, heavily on her vision, on her accuracy in doing things ... I have no qualms about that."); *see also* tr. at 100-01 (ALJ questioning Plaintiff about her past work as a registered nurse). While the ALJ did not discuss Plaintiff's work history in his credibility assessment, he did consider it. Accordingly, Plaintiff's contention that the ALJ did not consider her work history is without merit.

## VI.    CONCLUSION

For the reasons described above, the Court finds that the ALJ's treatment of Dr. Zielinksi's opinion, in part, and Dr. Andrefsky's opinion as a whole is not supported by substantial evidence. This case is remanded to the ALJ for reevaluation of Dr. Zielinski's opinion, specifically with regard to her "most restrictive opinions, including her opinion that the claimant's impairments would cause her to be 'off task' more than 25% of a typical workday." This case is also remanded for the ALJ to reevaluate Dr. Andresfky's opinion in its entirety.

Accordingly, the Court REVERSES the decision of the ALJ and REMANDS Plaintiff's case for further proceedings consistent with this opinion.

Case reversed and remanded under 42 U.S.C. § 405(g) (sentence four).

IT IS SO ORDERED.


Date: March 31, 2020                    */s/George J. Limbert*
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE